Benjamin H. Minchew v. Commissioner. Benjamin H. and Juanita B. Minchew v. Commissioner.
Benjamin H. Minchew v. Commissioner
Docket Nos. 35967, 35968.
United States Tax Court
1953 Tax Ct. Memo LEXIS 100; 12 T.C.M. (CCH) 1107; T.C.M. (RIA) 53320; September 30, 1953
*100 During 1947, 1948, and 1949, Benjamin H. Minchew's bank deposits were more than twice the amount of his principal source of income. He was unable to identify certain deposits. He sold a building in 1949. Certain depreciable capital improvements were made to it during the 23-year period it was held. Other improvements of unsubstantiated value or nature were allegedly made. 1. Held, respondent was justified in adding unexplained bank deposits to petitioners' income. 2. Held, further, the basis for determining the amount of long-term capital gain on the sale of the building is its cost plus proven capital improvements, less depreciation. James B. Estes, Jr., Esq., 405 Bunn Building, Waycross, Ga., for the petitioners. James R. Harper, Jr., Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in income tax and penalties, as follows: 5%
6%
Year
Tax
Penalty
Penalty
1947
$2,463.58
$123.18
$235.10
1948
2,718.56
135.93
196.93
1949
3,430.76
171.54
402.62
The issues raised by the pleadings are: (1) did petitioners understate the amount of their taxable *101 net income by failing to include therein certain unidentified bank deposits; by taking improper deductions therefrom as necessary business expenses, taxes, depreciation, interest, contributions, medical and dental expenses; and, in addition, for the year 1949, by failing to include therein the correct amount of long-term capital gain realized on the sale of an office building in that year; and (2) did the respondent err in adding to the deficiencies 5 per cent negligence penalties, as provided by section 293 (a) of the Code, and 6 per cent penalties for understatement of the amount of estimated tax, as provided by section 294 (d) (2). The petitioners, on brief, conceded respondent's determination of all deficiencies and penalties, except as they result from including as income certain unidentified bank deposits and from the computation of long-term capital gain realized on the sale of a lot and an office building thereon in 1949. Such concession will be taken into account in the Rule 50 computation. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein. Benjamin H. Minchew (hereinafter referred to as the petitioner) *102 and Juanita B. Minchew were husband and wife during the years here in question, living in Waycross, Georgia. Petitioner filed an individual income tax return for the year 1947, and he and his wife filed joint returns for the years 1948 and 1949 with the collector of internal revenue for the district of Georgia. Petitioner, a doctor of medicine, has specialized in ear, eye, nose, and throat practice, in Waycross, since 1912. During the years here in question, he practiced in partnership with B. E. Collins, M. D. Partnership returns for those years were filed, and reported petitioner's distributive share of partnership income, as follows: Year
Amount
1947
$19,351.64
1948
19,696.48
1949
14,026.63
Petitioner maintained only one bank account which was with the First National Bank of Waycross, and made deposits in that account during the years in question, as follows: Year
Total Deposits
1947
$50,871.47
1948
45,098.72
1949
40,478.15 During those years, petitioner borrowed from various sources, amounts ranging from $50 to $2,500 which were included in his bank deposits. In making an analysis of petitioner's bank account, the internal revenue *103 agent deducted all deposits which might possibly represent the proceeds of such loans. Little specific evidence existed as to the exact amounts of such loans; bank records were incomplete; and petitioner was of little assistance in attempting to identify the many deposits in his account. The only records made available to the agent were some of petitioner's canceled checks for 1947, all such checks for 1948 and 1949, and the partnership books. After segregating the proceeds of loans deposited and indentifying the source of some other deposits, the revenue agent concluded that the following unidentified deposits, for which petitioner offered no explanation, represented additional income: Year
Amount
1947
$1,719.51
1948
2,704.20
1949
4,456.18
In 1926, petitioner purchased a lot and a one-story frame dwelling thereon, on the southwest corner of Elizabeth & Remshart Streets, in Waycross, for use as an office. Of the total purchase price of $7,500, $4,500 represented the value of the land and $3,000 the value of the building. Prior to occupying it in that year, petitioner spent $5,000 on a complete renovation of the building. In 1930, $3,000 was spent for further *104 capital improvements and, in 1941, $1,920 was also so spent. Subsequent to the date of purchase, petitioner paid a city paving assessment of $1,144.22. In computing depreciation in his returns for the years in question, petitioner stated that the value of the building as renovated in 1926 was $8,000, and that it had a life of 25 years. Additions made in 1941, he considered to have a life of 20 years. In 1949, petitioner sold the building for $18,000. His return for that year reported a long-term capital gain therefrom of $9,010.84, computed as follows: Sale price
$ 18,000.00
Depreciation to date
7,917.33
$25,917.33
Less: Cost or other basis and cost of
subsequent improvements
16,906.49
Gain
$ 9,010.84
In the notice of deficiency, respondent computed such gain to be $16,408.33, as follows: Sale price
$18,000.00
Depreciation
8,328.33
$26,328.33
Less: Cost of land and build-
ing (1926)
$8,000
1941 improvement
1,920
9,920.00
Gain
$16,408.33
The correct basis for determining the amount of long-term capital gain, realized on the sale of the office building in 1949, is its cost of $7,500, plus the cost of the paving *105 assessment, plus capital improvements made in 1926, 1930, and 1941, less depreciation of $8,328.33 and depreciation allowed or allowable on the 1930 capital improvement. Petitioner's returns for the years here in question reported net income, as compared with the respondent's determination, as follows: Petitioner
Respondent
Year
Reported
Determined
1947
$8,746.51
$15,807.43
1948
7,127.09
18,990.70
1949
6,434.14
* 17,013.35
*106 Footnotes
*. This amount does not include any adjustment for the alleged increased amount of capital gain realized on the sale of the office building. On his returns, petitioner showed payments on Declaration of Estimated Tax of $50 in 1947; $125 in 1948; and $250 in 1949. Petitioner received but did not report additional income in 1947 of $1,719.51; in 1948 of $2,704.20; and, in 1949 of $4,456.18. The petitioner was negligent in failing to report the correct amount of taxable income for the years in question, and substantially underestimated his correct tax liability. Opinion RICE, Judge: It is axiomatic that the respondent's notice of deficiency is prima facie correct and that the petitioner has the burden of overcoming that presumption. This petitioner has largely failed to fulfill his burden. Substantial parts of the deficiencies herein rest upon the respondent's disallowance of alleged business expenses, interest, taxes, contributions, and adjustments in partnership income. After originally protesting the respondent's determination of all deficiencies and penalties, petitioner now concedes such additional tax liabilities except as they result from increases in taxable income by the addition thereto of certain unidentified bank deposits and by the computation of the amount of long-term capital gain realized on the sale of the lot and office building in 1949. Petitioner's returns for the years here in question indicate his principal source of income to be his distributive share of partnership earnings. In all three years, his total bank deposits were more than twice the amount of income from that source. Petitioner attempts to explain this by showing that deposits over and above withdrawals from partnership earnings were the proceeds of various loans which he received. Respondent's agent accepted this explanation, substantiated only in some instances by corroborative evidence, for many such deposits. The only books and records available to him were petitioner's canceled checks and the partnership books. The record does not indicate that petitioner was particularly helpful in explaining unidentified deposits; nor did he at the trial offer any adequate evidence to overcome respondent's determination that certain unexplained deposits, remaining after all others had been identified, were additional income. Petitioner testified that additional capital improvements, other than those shown on his returns, were made to the office building, sold in 1949: one in 1930 of $3,000, one in 1935 of $3,800, and his return for 1949 indicates that something was spent in that year in "Remodeling Bldg. before Sale". His testimony was corroborated to some extent by his brother-in-law, an attorney. His returns for none of the three years here in question show that such improvements, if capital in nature, were depreciated. No explanation was offered on his return, or at the trial, of how he arrived at a basis of $16,906.49 for determining gain. Neither did he contest respondent's allowance for depreciation on the building, and we have found that amount to be correct. Petitioner had no records of his alleged capital improvements; and his testimony, as well as that of his brother-in-law, left the exact amount expended for such improvements unascertainable. Doing the best we can with this record and taking into consideration the rule of (C.A. 2, 1930), we have found that capital improvements, together with a paving assessment, amounted to $11,064.22. That amount will be added to the original cost of $7,500 in computing the long-term capital gain on the sale of the property, with such adjustment for allowed or allowable depreciation of the $3,000 capital improvement made in 1930 as may be necessary. We think the fair inference to be drawn from this record is that the substantial understatements in reported income were due to negligence and that the deficiencies, in part, resulted therefrom. We have found that petitioner also substantially understated his estimated income tax liability. The respondent was, therefore, justified in asserting penalties under sections 293 (a) and 294 (d) (2) of the Code. Decision will be entered under Rule 50.↩